428 So.2d 363 (1983)
OSSIP-HARRIS INSURANCE, INC., Appellant,
v.
BARNETT BANK OF SOUTH FLORIDA, N.A., Appellee.
No. 82-1250.
District Court of Appeal of Florida, Third District.
March 22, 1983.
*364 Wolfson & Diamond, Miami Beach, and Karen B. Bernstein, Coral Gables, for appellant.
Rosenberg, Reisman & Glass and Stephen H. Reisman, Miami, for appellee.
Before HENDRY, BARKDULL and BASKIN, JJ.
HENDRY, Judge.
Ossip-Harris Insurance Company (Ossip) appeals from an adverse summary judgment in an action to recover for forged checks cashed by Barnett Bank. The complaint alleges Barnett wrongfully paid ninety-nine forged checks drawn on Ossip's account. The checks had been forged by Ossip's bookkeeper and made payable to the bookkeeper's creditors or to herself. Barnett's answer raised several affirmative defenses, inter alia, that Ossip failed to detect and report the forgeries to Barnett pursuant to Section 674.406, Florida Statutes (1981), and that Ossip's negligence substantially contributed to the making of the forged checks. Ossip did not reply to Barnett's affirmative defenses. Following a hearing the trial court entered summary judgment for Barnett. Ossip's motion for rehearing was denied and the instant appeal was taken. We affirm.
Briefly, the facts reveal that Ossip maintained a checking account with Barnett during 1980-1981. From May 29, 1980 to June 18, 1981, Dorothy Edgerly, Ossip's bookkeeper, used a facsimile signature stamp to forge the name of Edward Harris, Ossip's president, to ninety-nine checks totaling $19,711.90. When the cancelled checks came back to Ossip, Ms. Edgerly would replace the payee name with one of a legitimate Ossip business expense.
During this time, Edward Harris periodically reviewed the monthly statements and cancelled checks, but did not detect the forgeries until June 18, 1981 when he notified Barnett. Subsequent to the notification, no further forged instruments were paid by Barnett.
Ossip's two grounds of appeal are (1) a genuine issue of material fact exists as to whether Ossip's president, Edward Harris, was in fact negligent, and, if so, whether the negligence substantially contributed to the forgeries so as to preclude Ossip from asserting liability against the bank, and (2) a genuine issue of material fact exists as to whether Barnett failed to exercise ordinary care in paying the items, thereby allowing for assertion of liability by Ossip pursuant to Section 674.406, Florida Statutes (1981).
Resolution of this dispute turns on the provisions of subsections (1) through (3) of Section 674.406, Florida Statutes (1981), which state:
(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement *365 and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:
(a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
(b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).
Subsection (1) of the statute clearly requires a bank customer such as Ossip to "exercise reasonable care and promptness" in examining bank statements and items to discover any unauthorized signatures or alterations. If this duty is not complied with, paragraph (b) of subsection (2) of the statute precludes recovery from the bank on any checks containing an unauthorized signature which were paid by the bank at least fourteen days after the first item and statement were made available to the customer. Industrial Systems of Huntsville, Inc. v. American National Bank of Huntsville, 376 So.2d 742 (Ala. Ct. App. 1979); Indiana National Corp. v. Faco, Inc., Ind. App., 400 N.E.2d 202 (Ct.App. 1980); Coleman v. Brotherhood State Bank, 3 Kan. App. 2d 162, 592 P.2d 103 (Ct.App. 1979). This provision applies where, as here, the forgeries are perpetrated by the same wrongdoer. Space Distributors, Inc. v. Flagship Bank of Melbourne, N.A., 402 So.2d 586 (Fla. 5th DCA 1981). Subsection (3) of the statute provides, however, that subsection (2) is inapplicable where the "customer establishes lack of ordinary care on the part of the bank in paying the item(s)."
We find that Barnett met its burden, as movant for summary judgment, of conclusively showing that Ossip failed to meet its initial burden under subsection (1) of the statute in that it did not "exercise reasonable care and promptness to examine the statement and items to discover" the unauthorized signatures. The undisputed evidence demonstrates that Ossip received bank statements from Barnett each month from May 1980 to June 1981 and that the statements contained the cancelled checks alleged to be forgeries. In response to a question posed by Ossip's own attorney, Edward Harris admitted that he did not actually review the signature on all of the company's cancelled checks and even admitted that he didn't pay attention to the signatures on the checks but was more concerned with the amounts and whether it was "the kind of check [Ossip-Harris] would normally pay." The checks were thus not scrutinized for unauthorized signatures as required by statute, nor was reasonable notice given to Barnett of any wrongdoing after the first statement and checks were made available to Ossip within the meaning of Section 674.406(2)(b). Consequently, the evidence supports the conclusion, as a matter of law, that Ossip failed to exercise the degree of care required by statute, Space Distributors, Inc. v. Flagship Bank of Melbourne, N.A., 402 So.2d at 588, and under Section 674.406(2)(b), is therefore precluded from recovering against Barnett unless it can establish lack of ordinary care by Barnett in paying the forgeries.
Under Section 674.406(3), the burden of proving Barnett's lack of ordinary care falls squarely on Ossip-Harris. Westport Bank and Trust Co. v. Lodge, 164 Conn. 604, 325 A.2d 222, 227 (1973); NuWay Services, Inc. v. Mercantile Trust Company National Association, 530 S.W.2d 743 *366 (Mo. App. 1975); Thoreson v. Citizens State Bank, 294 N.W.2d 397 (N.D. 1980). Deposition testimony by Estella Brown, an employee of Barnett that handled the Ossip-Harris account, established that she had received six months of on-the-job training and that she examined each check against the signature card on file with the bank to determine the validity of the signature. When any problems arose with regard to signatures, she would bring the checks to the attention of her supervisor. Ossip presented no evidence of either the accepted standard of ordinary care in the banking world, or that Barnett's method of detecting forgeries did not meet this standard. Ossip's only argument in this regard, that the bank was negligent in not detecting the forgery, is particularly unavailing in light of the fact that Edward Harris failed to detect the forgery of his own signature. To require Barnett's employees to be handwriting experts as Ossip seems to imply, would establish a higher standard than that required by the statute, which is simply ordinary care. See Industrial Systems of Huntsville, Inc. v. American National Bank of Huntsville, 376 So.2d at 745. In the absence of any evidence to present a jury question of whether Barnett exercised ordinary care in paying the forgeries, we cannot rule that the trial court erred in concluding as a matter of law that Ossip failed to establish a lack of ordinary care so as to rebut the summary judgment motion and meet its statutory burden. See Industrial Systems of Huntsville, Inc. v. American National Bank of Huntsville, 376 So.2d at 745; cf. Space Distributors, Inc. v. Flagship Bank of Melbourne, N.A., 402 So.2d at 589.
We have reviewed the evidence in a light most favorable to Ossip, Landers v. Milton, 370 So.2d 368 (Fla. 1979); Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977), and, finding no genuine issue of material fact remaining for resolution, Holl v. Talcott, 191 So.2d 40 (Fla. 1966), affirm the final summary judgment under review.
Affirmed.