499 A.2d 362

**Francis MONAGHAN, T/A Monaghan's Collision Service**

v.

**PROVIDENT NATIONAL BANK, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed Sept. 27, 1985.

Walter Weir, Jr., Philadelphia, for appellant.

Melvin R. Shuster, Philadelphia, for appellee.

Before TAMILIA, LIPEZ and SHIOMOS *, JJ.

LIPEZ, Judge:

This action was brought in both trespass and assumpsit to recover amounts paid by defendant bank on checks drawn on plaintiff's account to plaintiff's bookkeeper, who had forged plaintiff's signature and cashed the forged checks. After defendant bank filed its answer, both sides moved for summary judgment. The court below granted the defendant bank's motion for summary judgment as to plaintiff's trespass claim, which the court held was barred by the two-year statute of limitations. 42 Pa.C.S. § 5524(3). The court also held, however, that the count in assumpsit was not time-barred, because it was brought within the four-year statute of limitations of 42 Pa.C.S. § 5525(3) and (4). The court further held that the bank was strictly liable to plaintiff for checks paid on a forged signature, and therefore summary judgment was granted for the plaintiff on the assumpsit count. Defendant bank then took this appeal, in which it contends: (1) the two-year statute of limitations in 42 Pa.C.S. § 5524(3) bars plaintiff's claim in the assumpsit count as well as in the trespass count; (2) plaintiff's claim is also barred by section 4406 of the Uniform Commercial Code, 13 Pa.C.S. § 4406; and (3) the court below should not have granted summary judgment to the plaintiff, because questions of material fact remained to be tried. We disagree that plaintiff's claim was barred by either 42 Pa.C.S. § 5524(3) or 13 Pa.C.S. § 4406, but we agree that material questions of fact remained to be tried. Therefore we vacate the order granting summary judgment to the plaintiff, and remand for trial on the assumpsit count in plaintiff's complaint.

The basic facts of the case are simple. Plaintiff is a businessman who maintained a checking account for his business with the defendant bank. Plaintiff himself was the only one authorized to sign checks drawn on the ac-

* Judge Thomas N. Shiomos, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

count, but plaintiff's bookkeeper regularly transacted business at the bank on plaintiff's behalf. During the period from February, 1979 to July, 1981, the bank honored a number of checks, made out to "CASH," which were presented for payment by the bookkeeper and on which she had forged plaintiff's signature. Since the bookkeeper herself was the only person in plaintiff's office who received and reviewed the monthly statements and cancelled checks sent by the bank, plaintiff did not discover and report the fraud until July, 1981, when the bookkeeper was in the hospital. The bank refused to recredit plaintiff's account for the amounts paid to the bookkeeper on the forged checks, and in August, 1983, plaintiff brought this action to recover on the thirty-one of the forged checks which were cashed between September, 1980 and July, 1981.[1]

In contrast to this simple fact pattern, some of the bank's arguments are fairly labyrinthine. To facilitate discussion, we shall address the issues in a different order from that of the bank's brief, beginning with the relatively simple issue of the statute of limitations. It is undisputed that the action was brought more than two years, but less than four years, after accrual of the cause of action on each check on which plaintiff has sued, so the only question is whether the two-year or four-year statute of limitations governs. Plaintiff has not appealed the lower court's determination that the trespass count of the complaint is barred by the two-year limitation of 42 Pa.C.S. § 5524(3),[2] so all that is before us is the bank's contention that the two-year limitation of section 5524(3) also applies to the assumpsit count.

**1.** Plaintiff made no claim for 17 other checks for which he had received both statements and cancelled checks more than a year before discovery and reporting the forgery. Plaintiff apparently recognized that 13 Pa.C.S. § 4406(d) presented an absolute bar as to those checks. *See Hardex-Steubenville Corporation, Inc. v. Western Pennsylvania National Bank,* 446 Pa. 446, 456–57, 285 A.2d 874, 880 (1971), reh'g denied (1972).

**2.** Section 5524(3) provides a two-year statute of limitations for "An action for taking, detaining or injuring personal property, including actions for specific recovery thereof." 42 Pa.C.S. § 5524(3).

■ The bank contends that the only four-year statute of limitations which might apply to plaintiff's case is section 5525(4) of the Judicial Code, which provides a four-year limitation for "An action upon a contract implied in law, except an action subject to another limitation specified in this subchapter." 42 Pa.C.S. § 5525(4). The bank further argues that the trespass count and assumpsit count of plaintiff's complaint are not distinct causes of action but only alternative theories of recovery, and therefore plaintiff is subject to the exception in section 5525(4) for "an action subject to another limitation specified in this subchapter," *viz.*, the two-year limitation of 42 Pa.C.S. § 5524(3). The first flaw in the bank's argument is that plaintiff's action is clearly based on alleged breach of an express contract between himself as customer and the bank, rather than a contract implied in law. *See Hardex-Steubenville Corporation, Inc. v. Western Pennsylvania National Bank*, 446 Pa. 446, 449–50, 285 A.2d 874, 876 (1971), *reh'g denied* (1972). Therefore the applicable statute of limitations here is not section 5525(4), but section 5525(3), which provides a four-year limitation for "An action upon an express contract not founded upon a instrument in writing." 42 Pa.C.S. § 5525(3). Unlike section 5525(4), section 5525(3) contains no exception, so the four-year limitation clearly applies here.

■ Moreover, even if the applicable section were 5525(4), we would not find the exception in that section for "an action subject to another limitation" applicable to this case. Plaintiff's action is not subject to the two-year statute of limitations for trespass actions in section 5524(3), because plaintiff has no cause of action for trespass under Pennsylvania law. *See Cumis Insurance Society, Inc. v. Girard Bank*, 522 F.Supp. 414, 418–19, n. 11 (E.D.Pa.1981), *as amended* (collecting cases). Thus the court below correctly concluded that the four-year statute of limitations applies to the assumpsit count of plaintiff's complaint, and refusal to

dismiss that count was proper, because it was filed within four years.

■ The bank's next argument is based on section 4406 of the Uniform Commercial Code, which provides in pertinent part:

(a) General rule.—When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statements and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration of an item and must notify the bank promptly after discovery thereof.

(b) Effect of failure to report unauthorized signature or alteration.—If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (a) the customer is precluded from asserting against the bank:

(1) his unauthorized signature or any alteration of the item if the bank also establishes that it suffered a loss by reason of such failure; and

(2) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(c) Nonliability of bank affected by lack of ordinary care.—The preclusion under subsection (b) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item.

(d) Statutes of limitations applicable to customer.— Without regard to care or lack of care of either the customer or the bank a customer who does not within one

year from the time the statement and items are made available to the customer (subsection (a)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

13 Pa.C.S. § 4406.

The bank contends that plaintiff failed to comply with his obligations under subsection (a) of section 4406, and therefore subsection (b)(2) precludes plaintiff's suit on all 31 checks, since all the forgeries were by the same wrongdoer, and all 31 of the checks were cashed more than 14 days after the first item or statement was made available to plaintiff and before the bank received notification from plaintiff of the forgeries. Plaintiff counters the bank's subsection (b)(2) defense by pointing to subsection (c), which provides that subsection (b)'s preclusion "does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item." 13 Pa.C.S. § 4406(c).

The bank answers plaintiff's subsection (c) counter-argument with a complex statutory construction argument, the linchpin of which is the bank's contention that the words "the item"[3] at the end of subsection (c) refer to the phrase "the first item" as used in subsection (b)(2). Based on this reading of "the item" to mean "the first item," the bank contends that subsection (c) is inapplicable for two reasons: (1) the record does not show lack of ordinary care by the bank with respect to the first item; and (2) since recovery on the first item is absolutely precluded by the one-year statute of limitations of subsection (d), the first item cannot

---

**3.** "Item" is defined in Article 4 of the Uniform Commercial Code as follows: "Any instrument for the payment of money even though it is not negotiable but does not include money." 13 Pa.C.S. § 4104(a). The term is more broadly defined than Article 3's "Instrument," which means: "A negotiable instrument," 13 Pa.C.S. § 3102(a), but both terms include the checks involved here. See 13 Pa.C.S. § 3104(b)(2).

be used as the basis for liability on any other item. We do not believe that these conclusions would necessarily follow, even if we agreed with the bank's contention that "the item" referred to in subsection (c) means "the first item," but since we disagree with this necessary premise of the bank's argument, we need not decide whether the bank's additional claims concerning the first item are correct.

We agree with plaintiff that "the item" in subsection (c) refers to any item for which the plaintiff is suing, rather than "the first item," which is mentioned in subsection (b)(2). This is demonstrated by the fact that subsection (c) refers to "the preclusion of subsection (b)" as a whole, rather than of subsection (b)(2) in particular. Neither subsection (b)(1) nor the introductory clause to subsection (b) refer at all to "the first item." Subsection (c) is clearly intended to render the "preclusion of subsection (b)" ineffective when the bank does not use ordinary care in paying "the item," regardless of whether the preclusion arises from subsection (b)(1) or (b)(2). The only sensible reading of "the item" in subsection (c) would therefore be that it refers to any item to which the bank is attempting to apply "the preclusion of subsection (b)."

The bank points out that a court in Ohio has held that "the item" in section 4406(c) refers to "the first item" *George Whalley Company v. National City Bank of Cleveland,* 55 Ohio App.2d 205, 380 N.E.2d 742 (1977). The bank claims that this Ohio case is an especially strong guide for interpreting Pennsylvania law, because in the official version of the Uniform Commercial Code, section 4406(c) ends with "the item(s)," while both Pennsylvania and Ohio have changed their version to read "the item." Since the case is from another jurisdiction, however, we are not bound by it. Its only value in this court is its reasoning, which we do not find persuasive. As previously stated, reading "the item" to mean "the first item" would mean that subsection (c) refers only to preclusion under subsection (b)(2), which is clearly contrary to the express reference

in subsection (c) to preclusion under all of subsection (b). The legislature has unambiguously expressed its intent that "the item" in section 4406(c) means any item for which the plaintiff sues and to which the bank attempts to apply the preclusion of subsection (b).[4] We are required to interpret the statute according to its plain meaning. 1 Pa.C.S. § 1921(b). The bank has therefore not established a defense under section 4406 at this state of the proceedings.

■ This does not mean, however, that the plaintiff has eliminated any possibility of a defense under section 4406, as he was required to do in order to be entitled to summary judgment at this time. The opinion of the court below does not address the bank's final claim, that plaintiff was not entitled to summary judgment at this state because material questions of fact remained to be tried. The opinion bases its grant of summary judgment to the plaintiff on the assumpsit count solely on a statement in a federal court opinion (applying Pennsylvania law) to the effect that there is "strict liability under the Code as between a drawee bank and a drawer customer" when a check is paid on a forged drawer's signature. *Cumis Insurance Society, Inc. v. Girard Bank*, 522 F.Supp. 414, 419 (E.D.Pa.1981).

While the *Cumis* opinion provides an excellent summary of Pennsylvania law in this area, it must be read in its entirety. Immediately after the reference to "strict liability" which was quoted by the court below, the *Cumis* opinion made the following additional observation: "Under the Code scheme, the drawee bank can escape liability if the

4. The apparent reason the Pennsylvania legislature substituted "item", for "item(s)" in its version of the Uniform Commercial Code was that section 32 of the Statutory Construction Act of 1937, applicable at the time of enactment of the Code, provided: "The singular shall include the plural, and the plural, the singular." Act of May 28, 1937, P.L. 1019, art. III, § 32, *reenacted as* 1 Pa.C.S. § 1902. While this rule of statutory construction is not absolute, *see, e.g., Commonwealth v. Goins*, 508 Pa. 270, ——, 495 A.2d 527, 533–34 (1985), it certainly applies to section 4406(c), since it is not "inconsistent with the manifest intent of the General Assembly." 1 Pa.C.S. § 1901.

drawer is: (1) precluded from denying the validity of the signature (13 Pa.C.S.A. § 3404(a)); (2) negligent in allowing the forgery or negligent in not discovering it (13 Pa.C.S. §§ 3406 and 4406); (3) deemed to have ratified the unauthorized signature (13 Pa.C.S. § 3404(b))." *Cumis Insurance Society, Inc. v. Girard Bank, supra,* 522 F.Supp. at 419–20 (citation and footnote omitted). Here the bank raised defenses under both section 3406 and 4406, and plaintiff did not meet the standard for summary judgment under Rule of Civil Procedure 1035 with respect to these defenses.

Summary judgment should be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035. In deciding whether this is so, a court must view the evidence in the light most favorable to the non-moving party, and enter judgment only if the case is clear and free from doubt.

*Berardi v. Johns-Manville Corporation,* 334 Pa.Super.Ct. 36, 38, 482 A.2d 1067, 1068–69 (1984) (citations omitted).

Plaintiff contends he was entitled to summary judgment because the factual situation in his case is essentially the same as in *Hardex-Steubenville Corporation, Inc. v. Western Pennsylvania National Bank, supra.* We agree that the fact pattern of *Hardex-Steubenville* is essentially almost identical to the facts here, but because of the differing procedural postures of the two cases, the similarity of the fact pattern tends to support the bank's position, rather than plaintiff's. The Court in *Hardex-Steubenville* did not grant summary judgment to the plaintiff there, but reversed a jury verdict for the defendant and remanded for a new trial, because the trial judge had erroneously instructed the jury that if both parties were negligent, they would have to find for the bank. 446 Pa. at 452 & n. 5, 285 A.2d at 877–78 & n. 5. The new trial was granted because of this incorrect instruction regarding the jury's findings of

negligence, but the questions of whether the bank or the plaintiff or both were in fact negligent were clearly to be left to the jury again in the retrial of the case. Plaintiff here would have us do precisely the opposite of *Hardex-Steubenville*, by permitting summary judgment, thus preventing the issue of the bank's negligence (or any other issue) from being presented to a trier of fact.

In claiming that we can read this record in the light most favorable to the bank and still find that it is clear and free from doubt that the bank has no defense, the plaintiff relies solely on a single paragraph of an affidavit filed by a senior security officer of the defendant bank. That paragraph states as follows:

7. [The bank's] tellers ordinarily check and compare the signature appearing on any check drawn against one of its customer's accounts when presented for cash at a teller's window with the signature on a customer's signature card. However, when an agent of the customer, such as [plaintiff's] bookkeeper, is authorized by the customer to negotiate checks this procedure is not repeated indefinitely. Once the tellers are advised by the customer that the agent has the authority to cash such checks, the teller does not continually check the signature card since the customer and the agent are well known at the branch. As pointed out above, [the bookkeeper] was well known to the tellers at the branch office where these checks were cashed and on several occasions had questioned [plaintiff] about [the bookkeeper's] authority and in each case was advised that she had the authority.

In effect, plaintiff is asking us to hold that it is negligence per se for the bank to fail to check the signature card and compare it with every check presented for cash by the plaintiff's admittedly authorized agent, regardless of the volume of checks involved or any other circumstances. The principal case which plaintiff relies, *Hardex-Steubenville*, *supra*, does not explicitly reject this claim, because it does

not appear to have been raised in those precise terms, but a careful reading of *Hardex-Steubenville* does strongly indicate that rejection of plaintiff's argument would follow from the reasoning of Justice Pomeroy's opinion for the Court in that case. That opinion discussed the evidence of the bank's negligence as follows:

> At trial the Customer introduced testimony tending to show that the Bank had been negligent in honoring the forged checks. The Bank introduced testimony to the contrary and showing that during the period involved it had sent to the customer regular monthly statements of its accounts, together with the Customer's cancelled checks for each month.

*Hardex-Steubenville Corporation, Inc. v. Western Pennsylvania National Bank, supra,* 446 Pa. at 449, 285 A.2d at 876. The only factor specifically identified in this discussion as bearing on the issue of the bank's negligence is the bank's evidence showing that statements and cancelled checks were sent monthly by the bank to the customer. In the case before us, the plaintiff concedes that the bank did this much, and more.[5]

An even stronger indication that the *Hardex-Steubenville* opinion necessarily leads to rejection of plaintiff's argument is that the discussion of the undisputed facts in *Hardex-Steubenville,* 446 Pa. at 448, 285 A:2d at 875–76, clearly shows that the bank in that case had signature cards for the corporation's president, whose signature was being forged by the corporation's office manager, yet the bank never discovered the forgeries during the nearly three-year period that the forged checks were being cashed. If plaintiff's argument concerning the signature cards were correct, the issue of the bank's negligence should have been

5. Plaintiff concedes that the bank contacted him to confirm the bookkeeper's authority to cash the checks. Plaintiff denies the bank's additional claim that plaintiff told the bank's employees to stop bothering him about the bookkeeper, but for purposes of plaintiff's summary judgment motion, we must accept the position of the non-moving party, the bank.

taken from the jury, but instead the Court remanded so that the issue could be submitted to the jury again at the retrial. Likewise, the record here presents a triable issue of material fact as to whether the bank was negligent so as to vitiate its section 4406 defense, and summary judgment should not have been granted.

Summary judgment was also incorrect because there is still an issue of material fact as to the bank's defense under section 3406 of the Uniform Commercial Code, which provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the business of the drawee or payor.

13 Pa.C.S. § 3406. Plaintiff does not even argue, much less present any evidence of record, that the bank failed to act in accordance with the reasonable commercial standards of its business.[6] Instead, plaintiff relies on the following statement in a case from Tennessee:

> It is argued on behalf of the Bank that such examination of the signature card, which was not made in the instant case, is not practical under modern banking methods. Such may be true as a practical matter, but, if so, the Bank, because of that fact, cannot escape the consequences and must ... be held guilty of negligence.

---

6. Under section 3406, the bank must also pay the instrument in "good faith," a requirement which is shared with the section 4406 defense. See 13 Pa.C.S. § 4406(a), (b)(2). (The checks involved here fall within the definition of "instrument," as used in section 3406, and "item" or "items," as used in section 4406. *See* note 3, *supra.*) "Good faith" is defined in the Uniform Commercial Code as: "Honesty in fact in the conduct or transaction concerned." 13 Pa.C.S. § 1201. Plaintiff has also failed to establish on this record that the bank did not meet the Code's subjective "good faith" standard in paying the forged checks.

*Jackson v. First National Bank of Memphis, Inc.,* 55 Tenn.App. 545, 403 S.W.2d 109, 113 (Tenn.1966).

Even if we accepted the reasoning of the *Jackson* court, it could at most apply to the bank's section 4406 defense, which could be rendered ineffective under section 4406(c) if plaintiff established the bank's negligence. It would be a contradiction in terms, however, for us to accept the proposition that a bank could be deprived of a section 3406 defense because of conduct which is in accordance with reasonable commercial standards, since that is part of the definition of the section 3406 defense.

█ Finally, we must also reject the *Jackson* reasoning with respect to the section 4406 defense, although the point is not quite so clear-cut as under section 3406. *Jackson* is totally inconsistent with the Pennsylvania Supreme Court's strong implication in *Hardex-Steubenville Corporation, Inc. v. Western Pennsylvania National Bank, supra,* that failure to compare the signature cards with the checks cashed by a customer's agent, who is authorized to cash checks but not to sign them, does not by itself constitute negligence under section 4406.[7] Since there are several questions of material fact remaining to be tried, the order granting summary judgment to the plaintiff on the assumpsit count of his complaint cannot stand.

Order vacated, and case remanded for trial.

7. The *Hardex-Steubenville* opinion did little to specify what constitutes negligence under section 4406. *See* text accompanying note 4, *supra.* The opinion also did nothing to clarify the distinction between negligence under section 4406 and failure to act in accordance with reasonable commercial standards under section 3406, because the section 3406 defense had been waived in that case. 446 Pa. at 456, 285 A.2d at 879. It may be that there is little practical distinction, since even the treatise writers tend to treat them as essentially equivalent. *See, e.g.,* J. White & R. Summers, Uniform Commercial Code (1st ed. 1972), § 16–5, at 537, where a drawee bank which does not act in accordance with reasonable commercial standards is characterized as a "negligent drawee." Whatever the differences may be, we certainly cannot find on this record that plaintiff has established either negligence or failure to comply with reasonable commercial standards to a degree which satisfies the "clear and free from doubt" standard required for summary judgment.